# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

BARON GREENWADE,

      Petitioner,

v.                                     Case No. 3:17-cv-1036-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

      Respondents.

_____

## ORDER

## I.   Status

      Petitioner Baron Greenwade, an inmate of the Florida penal system, initiated this action, with the help of counsel, by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) on August 31, 2017. Petitioner challenges a 2010 state court (Duval County, Florida) judgment of conviction for which he is currently serving a fifteen-year term of incarceration. Doc. 1 at 1. Respondents assert the Petition is untimely filed and request dismissal of this case with prejudice. <u>See</u> Doc. 13 (Resp.).[1]

_____

[1] Attached to the Response are several exhibits. The Court cites to the exhibits as "Resp. Ex."

Petitioner, through counsel, filed a Reply. See Doc. 14. This case is ripe for review.[2]

## II.  One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended

28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and

---

[2] "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court, and "[t]he record provide[s] no basis for further inquiry" regarding equitable tolling. Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006). Thus, an evidentiary hearing will not be conducted.

made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

III. <u>Analysis</u>

On July 30, 2010, Petitioner entered a negotiated plea of guilty to trafficking in morphine, opium, oxycodone, heroin, hydrocodone or their derivatives (count one) and possession of cocaine (count two).[3] Resp. Ex. A at 29-30. That same day, the trial court sentenced Petitioner in conformance with his negotiated disposition to a fifteen-year term of incarceration with a fifteen-year minimum mandatory for count one, and a concurrent five-year term of incarceration for count two. <u>Id.</u> at 31-37. Petitioner sought a direct appeal, and on July 15, 2011, the First District Court of Appeal per curiam affirmed Petitioner's judgment and sentences without a written opinion.[4] Resp. Ex. D.

---

[3] Respondents note that Petitioner has unrelated convictions stemming from a jury verdict in <u>State v. Greenwade</u>, 2009-CF-5804. Resp. at 2. In this case, however, Petitioner only challenges the judgment and sentences imposed in <u>State v. Greenwade</u>, 2010-CF-1981. Doc. 1 at 1.

[4] During the pendency of his direct appeal, Petitioner filed a motion to withdraw plea, which the trial court denied on December 21, 2010. <u>Greenwade</u>, 2010-CF-1981.

Petitioner's judgment and sentences became final ninety days later on October 13, 2011.[5] See Clay v. United States, 537 U.S. 522 (2003); Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion." (citing Supreme Court Rule 13.3)). As such, Petitioner's federal one-year statute of limitations began to run the next day, October 14, 2011, and expired one year later on October 15, 2012,[6] without Petitioner filing a motion for postconviction relief that would toll the one-year period.

On March 27, 2013, Petitioner filed his first motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. E at 1-12. Petitioner filed an addendum to his Rule 3.850 motion on November 6, 2013. Id. at 13. Because there was no time left to toll, however, Petitioner's motions for postconviction relief did not toll the federal one-year limitations period. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating where a state prisoner files postconviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline has expired, there is nothing left to

---

[5] It appears that Respondents erroneously believe that the triggering date for Petitioner's federal one-year period is when Petitioner's state postconviction proceeding concluded. See Resp. at 7. The Court need not address Respondents' oversight or the longstanding precedent regarding the definition of "finality" for purpose of AEDPA.

[6] The last day fell on a Sunday, so the period continued to run until the following Monday. See Fed. R. Civ. P. 6(1)(C).

toll"); <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir. 2000) (per curiam) ("Under §

2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll

the limitations period. A state-court petition like [the petitioner]'s that is filed

following the expiration of the limitations period cannot toll that period because there

is no period remaining to be tolled."). Therefore, the Court finds that the Petition is

untimely filed.

Petitioner attempts to overcome this procedural bar by alleging a claim of actual

innocence. <u>See</u> Doc. 14. "[A]ctual innocence, if proved, serves as a gateway through

which a petitioner may pass whether the impediment is a procedural bar . . . or, as in

this case, expiration of the statute of limitations." <u>McQuiggin v. Perkins</u>, 133 S. Ct.

1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence,

a petitioner must "present new reliable evidence that was not presented at trial" and

"show that it is more likely than not that no reasonable juror would have found

petitioner guilty beyond a reasonable doubt in light of the new evidence." <u>Rozzelle v.

Sec'y, Fla. Dep't of Corr.</u>, 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and

citations omitted); <u>see</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (finding that to make

a showing of actual innocence, a petitioner must show "that it is more likely than not

that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable

doubt").

Petitioner claims he is innocent of count one because the hydrocodone pills

actually belonged to Antonio Gilmore. <u>See</u> Doc. 1 at 3-5. In support of this claim,

Petitioner provides Gilmore's affidavit, <u>see</u> Doc. 1-1, in which Gilmore states he has a

legitimate prescription for hydrocodone, and the medication that police seized from Petitioner's vehicle on February 21, 2010 belonged to him. See Doc. 1-1. Gilmore claims he inadvertently left the medication in Petitioner's vehicle after Petitioner took him to get the prescription filled on February 18 or 19, 2010. Id.

Petitioner asserts that prior to his pleas, he informed his attorney, Mark S. Barnett, Esquire, about Gilmore leaving the medication in his car, and gave Gilmore's contact information to Barnett. See Doc. 1 at 4. Petitioner claims that Barnett, however, erroneously advised Petitioner that he was unable to locate Gilmore and never informed Petitioner that he obtained this affidavit from Gilmore. Doc. 1 at 4. Petitioner further claims that Barnett never provided Petitioner's file to Petitioner's subsequent trial attorney after Barnett withdrew from Petitioner's case. Id. As such, Petitioner argues that he entered his pleas because he believed he had no viable defense. Id. He claims that had he known about Gilmore's affidavit, he would have insisted on going to trial and would have been found not guilty beyond a reasonable doubt. Doc. 14 at 2-3.

A review of the record shows that on February 25, 2010, Barnett, on behalf of Petitioner, filed a pretrial motion for reduction of bond or release on recognizance. Resp. Ex. E at 85. In support of his request, Barnett stated that "Mr. Antonio Gilmore accidentally left a bottle of hydrocodone pills in [Petitioner's] vehicle," and noted that Gilmore was willing to testify to such. Id. However, a review of the trial court's docket

reveals that on March 1, 2010, Barnett withdrew the motion for bond reduction.[7] See Greenwade, 16-2010-CF-001981. The trial court docket also shows that Barnett filed a motion to withdraw as counsel on March 8, 2010, which the trial court granted. Id. The trial court subsequently appointed the Office of the Public Defender.[8] Id.

In consideration of this limited record, on January 7, 2019, pursuant to Rule 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court requested Barnett to submit an affidavit regarding Petitioner's current allegations. See Doc. 15. Barnett submitted his affidavit on February 1, 2019, attesting that he "absolutely informed Petitioner of the existence of [Gilmore's] affidavit, likely in person at the Duval County Jail, and in correspondence . . . dated March 4, 2010 . . . . which was hand-delivered to Petitioner . . . ." See Doc. 16 at 2. Barnett provides a copy of a letter that Barnett addressed to Petitioner during Petitioner's pretrial preparation.[9] See Doc. 16-1; see also Doc. 16 at 2 n.2. In the letter, Barnett advises Petitioner of the following:

---

[7] The trial court docket also reveals that the state filed a motion to revoke bond on March 1, 2010, which the trial court granted. See Resp. Ex. E at 89-90.

[8] It appears that Assistant Public Defender Christi Snyder, Esquire, and Assistant Public Defender Jeanine M. Herrington, Esquire, subsequently represented Petitioner. See Greenwade, 16-2010-CF-001981.

[9] Barnett explains that the original copy of the letter, along with Petitioner's entire physical file, were destroyed in accordance with his prior firm's retention policy. Doc 16 at 2 n.2. Due to this destruction, Barnett states that the copy provided to the Court bears the date of "January 8, 2019," which is the date the letter was transmitted to Barnett. Id. Barnett, however, confirmed that the letter was originally generated on March 4, 2010 because it contains a sentence in which he asked Petitioner to "call me tomorrow, March 5, 2010, so that we may discuss" the letter. Id.

As you know, it was our hope, on Monday, March 1, 2010, when I gave Mr. Sonson[10] the affidavit from Mr. Gilmore, as you instructed, that the State would accept that as a basis to not file the Hydrocodone charge. Unfortunately, Mr. Sonson told me that, after meeting with Mr. Gilmore, he simply did not believe Mr. Gilmore's statement to be credible. This is not to say that he believed the pills were not originally Mr. Gilmore's, but that he believes Mr. Gilmore sold you the pills. He also told me that he believed Mr. Gilmore was "close to cracking," and that had he offered Mr. Gilmore immunity from prosecution for the drug sale, he believed Mr. Gilmore would have signed a sworn statement claiming that he sold you the pills.

Doc. 16-1 at 2. In his affidavit, Barnett explains that Gilmore was initially willing to testify for Petitioner at Petitioner's hearing on the motion for bond reduction, but his willingness changed after Gilmore spoke with Sonson. Doc. 16 at 3. He states that after he learned of Gilmore's reluctance to testify, Petitioner consented to Barnett's withdrawal of the motion for bond reduction. Id. at 4.

Barnett believes that Petitioner terminated Barnett's representation during a conversation on March 5, 2010. Id. He admits that he did not provide Petitioner's new attorney with a copy of Gilmore's affidavit, but notes that he did provide the state with a copy, and thus, the state would have been required to provide new trial counsel with Gilmore's affidavit during discovery. Id. Barnett further explains that once the Public Defender's Office began its representation, Barnett approached Petitioner about signing a file release, so he could provide new counsel with Petitioner's case file. Id. at

---

[10] Vincent J. Sonson, Esquire, was the Assistant State Attorney assigned to Petitioner's case. See Doc. 16 at 3.

5. According to Barnett, Petitioner refused to sign the release and "specifically instructed me not to provide the Assistant Public Defender with his file." Id.

Barnett's affidavit wholly contradicts Petitioner's allegation that he was unaware of Gilmore's affidavit prior to his pleas. As such, Petitioner cannot demonstrate that Gilmore and the contents of Gilmore's affidavit constitute "new reliable evidence" that would have influenced his decision to enter his guilty pleas. Further, while Gilmore may have initially been willing to testify on behalf of Petitioner, Gilmore was ready to change his version of events once he learned that the prosecutor believed that he sold the drugs to Petitioner. Thus, Petitioner fails to demonstrate that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt in light of this evidence. Indeed, a review of Petitioner's plea colloquy reveals that Petitioner testified under oath that he was entering his pleas of guilt because he was, in fact, guilty. Resp. Ex. E at 69-70. This is not an "extraordinary" case under the Schlup standard.

## IV.   **Conclusion**

For the forgoing reasons, the Petition is untimely filed, and Petitioner has not shown an adequate reason why the dictates of the one-year limitations period should not be imposed upon him.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      This action is **DISMISSED with prejudice**.

2.    The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.    If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[11]

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of April, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:      Counsel of Record

---

[11] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.